State ⎫
    vs. ⎬ Ind. No. 15166.
Wilson A. Peckham ⎭

April 1, 1929.

CAPOTOSTO, J. The defendant was tried and convicted of conspiracy to defraud one Joseph P. Nourie of one thousand six hundred and sixty-five dollars. The co-defendant, Carl C. Stearns, pleaded nolo and testified for the State. Both had been members of a partnership, engaged in the roofing business, which conducted its affairs on a delayed payment plan evidenced by contracts and promissory notes. The genuine securities were discounted with a finance company in New York. The partnership, of which the defendant was treasurer, having fallen into financial difficulties, needed money to meet pressing obligations. The scheme which ultimately resulted in the present indictment then came into existence. It is a network of false representations and forgery. A minute account of the details of a plan which involved employees and brought financial loss to an honest investor is

left to the stenographic record. Let it be said, however, that it was cunningly conceived, boldly executed, and naively denounced by the defendant in his at-attempt to avoid responsibility.

The defendant's simplicity and cred-ulity exist more in words than in fact. He endeavored to portray himself to the jury as a simple farmer, inexperi-enced in the ways of the world, who had been innocently involved through the improper actions of a business associate. This same individual, how-ever, was obliged to admit, with ap-parent reluctance, that for a consider-able number of years he had the ex-perience, earnings, and association with resourceful members of the bar, which is the lot of a professional bondsman. In all its career this court has yet to meet a person engaged in this special activity who is a fit candi-date for the seraphic council. Worldly considerations, such as relations with those who may require his services, dealings for compensation, guarantees against possible loss, requests for delay and appeals for leniency in the case of defaults, make a professional bonds-man astute, cautious, calculating and always self-protecting. This defend-ant was no exception to the rule.

There is no doubt that Stearns was unscrupulous. There is equally as lit-tle doubt that the defendant knew the calibre of his partner, was acquainted with the desperate financial condition of the concern, realized that he faced a possible and considerable personal loss, approved of the illegal scheme in an attempt to avoid the impending wreck, and permitted the partnership bank account to be fattened with all the proceeds of the fraud.

The defendant was supposed to be the financial member of the partner-ship. At the very inception of the concern he insisted that all payments should be made by check and that no check should be issued unless signed by him as treasurer. His claim that he signed checks in blank promiscu-ously, that he confidingly affixed his name to blank notes both as treasurer of the partnership and in his individ-ual capacity, that he paid slight, if any, attention to bank statements and vouchers, is difficult to believe in the case of the ordinary person, much less when it involves a cool-heaedd Yankee farmer, and still less when it concerns a man who has had the experience of a professional bondsman. Using the terms of the stage, it may be said that Stearns was the actor and Peckham, the prompter. Both are necessary to a successful show. In this case both men co-operated in palming off a fraudulent scheme which required the appearance of solvency. Peckham, from start to finish, has kept himself behind the scenes. When trouble came, Stearns was told by the defendant to take the "rap" and that he, Peckham, would help him out. While the evi-dence of a co-defendant should be re-ceived with extreme caution, yet in this case the testimony of Stearns is so corroborated by the surrounding circumstances when interpreted in the light of human experience and com-mon sense that it carries conviction. Self-concealment in effecting the fraud, and self-protection after its detection were the dominant characteristics of the defendant's conduct.

The jury's verdict is in accord with the evidence, reflects sound judgment, and does justice between the parties.

Motion for new trial denied.

For State: Attorney General.

For defendant: Frank H. Wildes.